ESTATE OF ALFRED D. KAUFMANN, RAYMOND M. KAUFMANN, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 10907. Promulgated April 3, 1928.

*S. Leo Ruslander, Esq.*, for the petitioner.
*L. S. Pendleton, Esq.*, for the respondent.

414

OPINION.

ARUNDELL: In determining the fair market value of the accounts receivable of the Kaufmann Realty Co., the State appraiser reduced the total of the items, less the amount of $10,466.56 due from Raymond M. Kaufmann, 5 per cent. Many of these accounts were for rents advanced to owners of property being managed by the corporation and with one exception were unsecured. Among the various accounts was one of $4,757.86, representing money invested in patents taken out for the Freemen Automatic Appliance Co. As early as 1920 or 1921 it was known that the investment was a total loss unless the corporation succeeded in bringing about a consolidation with the Simmons Co., the holder of a prior and interfering patent. It subsequently developed that the investment was worthless. This valueless account is approximately $800 in excess of the reductions made in all of the items and clearly shows that the value of the accounts was not understated.

The deceased owned a one-half interest in the Kaufmann Development Co. and was a creditor thereof in the amount of $82,124.71.

The Kaufmann Development Co. not only erected buildings but generally financed the construction thereof for the owner. By the terms of the contracts under which buildings were erected the corporation paid for the account of the owner the cost of all material and labor, and the owner made certain stipulated cash payments during the course of construction of the building and upon completion gave the corporation a second mortgage for the balance of the contract price, less the amount of the first mortgage. Practically all of the items in the accounts receivable of the Kaufmann Development Co. represent money advanced under contracts during the course of the construction of buildings, principally residences, or sums due under second mortgages given by the property owner after the erection of the building. None of the mortgages ran for a longer period than two years and at the time of the death of the deceased, many

of the notes given under the mortgages, as well as unsecured accounts, were overdue and some have not been paid up to this time. In October, 1922, the market value in Pittsburgh of second mortgages of the type owned by the estate was not in excess of 80 per cent of their face amount.

The executor arrived at the fair market value of these accounts by reducing about two-thirds of them 20 per cent, or from $493,429.38 to $431,750.70.

We are satisfied from a careful consideration of all the evidence that the reductions made in the accounts receivable to determine their fair market value are reasonable and that the value of the interest of the deceased in the two corporations at October 4, 1922, was not in excess of $110,000.

*Judgment will be entered on 10 days' notice, under Rule 50.*